# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

PERRY WASHINGTON,

    Plaintiff,

    v.

FRESNO COUNTY SHERIFF, et al.,

    Defendants.

Case No. 1:14-cv-00129-SAB

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(ECF Nos. 114, 122, 123)

Plaintiff Perry Washington, proceeding pro se and informa pauperis, filed this action on January 29, 2014. Currently before the Court is Defendant Veloz'[1] motion for summary judgment filed on October 9, 2017.[2]

## I.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs Perry Washington and Anthonia Washington filed this action on January 29, 2014. (ECF No. 1.) On February 3, 2014, the complaint was stricken from the record as it was unsigned. (ECF No. 4.) A signed complaint was filed on February 11, 2014. (ECF No. 6.) On February 18, 2014, Plaintiff's complaint was dismissed with leave to amend for failure to state a

---

[1] Although named in the complaint as Tony Velos, the documents submitted in support of the motion for summary judgment refer to the defendant as Tony Veloz. (ECF No. 114.) The Court shall use the spelling of Defendant's name, "Veloz" as set forth in Defendant's motion for summary judgment.

[2] The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 101, 117.)

claim. (ECF No. 7.) On February 25, 2014, a first amended complaint was filed which was stricken as not being signed by Plaintiff Perry Washington. (ECF Nos. 11, 22.)

A first amended complaint ("FAC") was filed on April 2, 2014. (ECF No. 27.) Plaintiff's first amended complaint was screened on April 8, 2014, and findings and recommendations issued recommending dismissing certain claims and parties. (ECF No. 26.) The district judge adopted the findings and recommendations in part and this action is proceeding against Defendant Veloz for deliberate indifference under the Eighth Amendment and retaliation under the First Amendment. (ECF Nos. 43, 62.) On April 5, 2016, Plaintiff was appointed counsel after he was declared to be incompetent in his state criminal action. (ECF No. 92.)

On October 9, 2017, Defendant Veloz filed a motion for summary judgment. (ECF No. 114.) Plaintiff filed an opposition to the motion for summary judgment on November 14, 2017. (ECF No. 116.) In response to the Court's order striking unsigned exhibits from the opposition, Plaintiff filed an amended memorandum of points and authorities in opposition to the motion for summary judgment on November 20, 2017. (ECF No. 122.) On December 1, 2017, Defendant filed a reply to Plaintiff's opposition. (ECF No. 123.)

## II.

## UNDISPUTED FACTS[3]

1.      Plaintiff filed his FAC complaint on April 2, 2014, and this is the first complaint signed by Plaintiff. (ECF No. 27.)

2.      The Court found Plaintiff's FAC stated "two" claims against Defendant Veloz arising from Plaintiff's allegations that after his arrival at Fresno County Jail ("FCJ") on January 21, 2014, Plaintiff "asked to be removed from a cell because of threats from inmates. The officer said no, [Plaintiff] could not move, and refused to give [Plaintiff] a grievance form. Then when [Plaintiff] was attacked by a whole group of inmates, the guard refused to come when [Plaintiff] hit the emergency button. [Plaintiff] was beaten and his eye was punctured. The sheriff threw the

---

[3] Hereafter ("U.F.").

grievance down in [Plaintiff's] blood and said, "[t]his is what happens to people who ask for grievance forms." (ECF No. 27 at 7;[4] ECF No. 43 at 3-4, 7; see also ECF No. 26 at 3, 7.)

3.      Based on the filing of the original and FAC, the date of the alleged inmate assault and related interaction with Defendant Veloz occurred between January 21 and January 29, 2014. (ECF Nos. 1; ECF No. 27 at 7.)

4.      FCJ records reflect only three incidents involving alleged physical altercations between Plaintiff and other inmates between January 21, 2014, and January 29, 2014. (Decl. of Lt. Russell Duran in Support of Def.'s Mot. For Summary Judgment, or Alternately, for Summary Adjudication ("Duran Decl.") ¶ 10, ECF No. 114-4.)

5.      These three separately alleged incidents occurred on January 26, 2014, another the following day on January 27, 2014, and the last one, reported by Plaintiff but otherwise unconfirmed by the FCJ, on January 28, 2014. (Duran Decl. ¶ 11.)

6.      The January 29, 2014 pre-FAC pleadings (ECF No. 1) filed by Plaintiff's family members on his behalf clearly contain the same allegation of a beating and resulting injury (puncture) to Plaintiff's eye, as referenced in Plaintiff's subsequent FAC filed April 2, 2014, and that is attributed as the consequences of Defendant Veloz' allegedly unlawful acts/omissions. (ECF No. 1 at 1.)

7.      The only pre-FAC record of an incident involving an alleged physical altercation between Plaintiff and other inmates between January 21, 2014, and January 29, 2014, and in any way involving Defendant Veloz, is the January 26, 2014 incident. (Duran Decl. ¶ 12.)

8.      On January 26, 2014, FCJ staff, as part of the normal course of their business duties, generated an "Incident Detail" report in connection with an alleged inmate assault on Plaintiff on that day that also referenced an interaction between Plaintiff and Defendant Veloz. (Duran Decl. ¶ 16.)

9.      As indicated in the "Incident Detail," no FCJ staff witnessed the alleged January 26, 2014 inmate assault on Plaintiff. (Duran Decl. ¶ 14; January 26, 2014 Incident Report, ECF

---

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

No. 114-4 at 17.)

10.     To date, no other inmate has admitted to assaulting Plaintiff or admitted to or even reported witnessing another inmate assaulting Plaintiff on January 26, 2014, leaving Plaintiff's account as the sole account or report of any inmate assault on Plaintiff on January 26, 2014.  (Duran Decl. ¶ 15.)

11.     To date, the only indication that the redness to Plaintiff's facial area observed by officers on January 26, 2014, was even the result of an inmate assault comes from Plaintiff. (Duran Decl. ¶ 16.)

12.     As indicated in the January 26, 2014 "Incident Detail," the alleged inmate assault on Plaintiff and his only pre-FAC interaction with Defendant Veloz took place on FCJ's NJ 3rd floor housing unit's F-POD.  (Duran Decl. ¶ 18.)

13.     Upon release from the infirmary following the alleged January 26, 2014 inmate assault on Plaintiff, Plaintiff was immediately rehoused and moved to the NJ 2nd floor.  (Duran Decl. ¶ 19.)

14.     Defendant Veloz remained on assignment on the NJ 3rd floor following the alleged January 26, 2014 inmate assault.  (Duran Decl. ¶ 19.)

15.     The second incident involving Plaintiff and other inmates recorded by FCJ occurred the following day, on January 27, 2014, but took place on Plaintiff's new housing unit on the NJ 2nd floor.  (Duran Decl. ¶ 21.)

16.     Again, as part of the normal course of their business duties, FCJ staff generated an "Incident Detail" report at the time of and in connection with this unrelated January 27, 2014, inmate assault on Plaintiff.  (Duran Decl. ¶ 22.)

17.     As to the final or third alleged inmate assault, the actual occurrence of which the FCJ was unable to confirm, Plaintiff reported an alleged sexual-assault by other inmates occurred on January 28, 2014, but did not allege any involvement or interaction with or by Defendant Veloz.  (Duran Decl. ¶ 23.)

18.     The only injuries to Plaintiff accounted for by FCJ in its January 26, 2014 encounter with Plaintiff and alleged by Plaintiff to have resulted from an inmate assault, did not

1  involve any blood, bleeding, or "eye" injuries. (Duran Decl. ¶ 24; January 26, 2014 Incident

2  Report, ECF No. 114-4 at 17.)

3       19.    The only injuries to Plaintiff accounted for by FCJ staff in their January 26, 2014

4  encounter with Plaintiff, were a bump and fresh redness to Plaintiff's facial area, for which FCJ

5  medical staff provided an ice-pack and ibuprofen before releasing Plaintiff. (Duran Decl. ¶ 25;

6  January 26, 2014 Incident Report, ECF No. 114-4 at 17.)

7       20.    Apart from identifying Defendant Veloz as one of four responding officers to the

8  January 26, 2014 alleged post-inmate assault on Plaintiff, the FCJ's "Incident Detail" report of

9  this event is entirely devoid of any mention of the allegations raised by Plaintiff in his FAC

10  about his encounter with Defendant Veloz, including of any blood, bleeding, eye injuries,

11  grievance forms or requests for forms, complaints about Defendant Veloz or other officers, or a

12  failure to respond to an emergency call, or any threatening or hostile statements by inmates

13  toward Plaintiff, or by Defendant Veloz toward Plaintiff. (Duran Decl. ¶ 26; January 26, 2014

14  Incident Report, ECF No. 114-4 at 17.)

15       21.    The FCJ's subsequent "Incident Detail" report, however, documenting an

16  unrelated inmate assault on Plaintiff that occurred the following day on January 27, 2014, on the

17  NJ02 floor, does mention blood, bleeding, and eye injuries by and to Plaintiff as a result of a

18  fight with other inmates, but is otherwise entirely devoid of any mention of Defendant Veloz,

19  including of his presence or any interaction or contact with Plaintiff as alleged in Plaintiff's

20  FAC, including a failure to respond to an emergency call, or of any grievance forms or any

21  requests for or denial of said forms, or any threatening or hostile statements by inmates toward

22  Plaintiff, or by Defendant Veloz toward Plaintiff. (Duran Decl. ¶ 27; January 27, 2014 Incident

23  Report, ECF No. 114-4 at 19.)

24       22.    Plaintiff was booked into the FCJ on January 20, 2014, on charges of arson of an

25  inhabited structure, as well as warrants for driving while suspended and violation of a Court

26  order, and remained in custody there at all times relevant to this action and motion.[5] (Duran

27  ───────────────

[5] Plaintiff disputes this fact as he was transferred to a state mental facility due to his incompetence and held there
during a portion of his incarceration. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts No. 29, ECF

28  No. 122-4.) However, it is undisputed that at the time of the incidents alleged in the complaint and during the period

Decl. ¶ 28.)

23.     The Fresno County Sheriff's Office is responsible for the overall operation of FCJ.  (Duran Decl. ¶ 29.)

24.     FCJ has customs, policies and practices of classifying, housing, communicating with and supervising inmates, including high risk inmates; protecting inmates from attacks by other inmates; and communicating with medical staff among other things.  (Duran Decl. ¶ 30.)

25.     Since 2007, FCJ has used a jail management system, called Offender-Trak, a technology system of interconnected applications, providing for centralized offender and facility data entry and allowing the capture, storage and retrieval of inmate and other data from intake through release, including inmate grievance tracking data.  (Duran Decl. ¶ 31.)

26.     At all times relevant to this action, FCJ also had in place established inmate grievance processes and procedures, including a written and adopted official Department Policy entitled "Policies and Procedures No. E-140-Inmate Grievance Procedures," as well as an "Inmate Orientation Handbook," also describing the process.  (Duran Decl. ¶ 32.)

27.     At all times relevant to this action, the FCJ inmate grievance processes and procedures were in effect, and available for use and accessible by inmates, twenty-four hours a day, seven days a week.  (Duran Decl. ¶ 33.)

28.     Upon admission to FCJ, all inmates are provided with a copy of the "Inmate Orientation Handbook," describing the grievance process and procedures as part of their "welfare" or "welcome" pack, containing all items required by the inmate such as toothbrush, toothpaste, soap, and similar items.[6]  (Duran Decl. ¶ 34.)

29.     Depending on the ability of staff to act and respond at the actual time of the request, inmates could obtain an inmate grievance form (no. J-105A) by either requesting it directly from FCJ staff, or if necessary, submitting an "Inmate Request Form," aka "white sheet"

---

that Plaintiff would be required to exhaust his administrative remedies pursuant to FCJ regulations, Plaintiff was housed at FCJ.

[6] Plaintiff contends that he did not receive an inmate handbook as the jail ran out of them due to overcrowding. (Pl.'s Response to Def.'s Req. for Admission and Interrogatories, Response to Interrogatory No. 3, ECF No. 122-3 at 3.)

requesting one.  (Duran Decl. ¶ 36.)

30.     Depending on the circumstances at the actual time of the request, an inmate request for a J-105A grievance form is satisfied either immediately, or at the soonest available opportunity, but in any case no later the end of the officer's or staff's shift, who received the request.  (Duran Decl. ¶ 37.)

31.     FCJ grievance policies and procedures allow grievances for and are designed to alert FCJ to grievances concerning any condition of confinement at FCJ, including, but not limited to, officer conduct, disciplinary actions, food, mail, medical care, legal services, and telephone.  (Duran Decl. ¶ 38.)

32.     Pursuant to FCJ grievance policies and procedures, an inmate may also pursue any alleged or threatened act of retaliation by FCJ staff through the inmate grievance procedure.[7] (Duran Decl. ¶ 40.)

33.     Pursuant to the FCJ grievance policies and procedures, failure to submit a grievance within 14-days of an alleged incident or occurrence is considered abandonment of the grievance and is grounds for automatic rejection without investigation.  (Duran Decl. ¶ 41.)

34.     Inmate Grievance Form, J-105A, also states that an inmate has only 14-days from the date of the alleged incident to submit the grievance.  (Duran Decl. ¶ 42.)

35.     Inmate Grievance Form, J-105A, requires the inmate to provide specific information related to a grievance, notably: the name of the employee involved in the grievance (if applicable), the identity of any witnesses, the date and time of the incident being grieved, the specific type of grievance limited to one type per grievance, and a description of the important details of the alleged problem, events and other relevant information supporting the grievance. (Duran Decl. ¶ 43.)

36.     Pursuant to the FCJ grievance policies and procedures, an inmate submitting a grievance form J-105A must personally sign the form.  (Duran Decl. ¶ 44.)

37.     Pursuant to FCJ grievance policies and procedures, an inmate having trouble or

---

[7] Plaintiff disputes this fact stating that his grievance was returned marked past time to grieve by jail staff. However, the fact that Plaintiff did not file a timely grievance is not evidence to dispute that an inmate may grieve retaliation by FCJ staff through the grievance process.

otherwise needing assistance with a grievance form or process may obtain the assistance of jail staff or another inmate.  (Duran Decl. ¶ 45.)

38.    Pursuant to FCJ grievance policies and procedures, whenever possible staff is expected to take an active role in resolving complaints or problems informally through dialogue and discussion before inmates resort to the formal Inmate Grievance Form.  (Duran Decl. ¶ 46.)

39.    FCJ grievance policies and procedures do not establish a "drop-dead" deadline for FCJ staff to respond to an inmate grievance form submission, but rather establish that grievances shall be investigated and processed for review within a reasonable amount of time after submission, usually within fourteen (14) calendar days, when possible.  (Duran Decl. ¶ 48.)

40.    Once a grievance form is received by FCJ staff, even those withdrawn or otherwise immediately resolved by floor staff, they are placed in the grievance bin in the Distribution Room prior to the end of the shift.  (Duran Decl. ¶ 49.)

41.    Based upon the findings of the initial investigation, the investigating staff member shall make a recommendation to either sustain or not sustain the inmate grievance, after which the grievance along with this recommendation from the investigating staff member shall be reviewed by the Lieutenant or Manager/Supervisor who will make the final determination to either sustain or not sustain the grievance.  (Duran Decl. ¶ 50.)

42.    Pursuant to FCJ grievance policies and procedures, a copy of the outcome of the grievance is provided to the inmate.  (Duran Decl. ¶ 51.)

43.    Pursuant to FCJ grievance policies and procedures, an inmate may voluntary "withdraw" a grievance claim should the inmate choose that option at any time during the grievance process, including after receipt of the outcome.  (Duran Decl. ¶ 52.)

44.    Grievance Form, J-105A contains a specific space for an inmate to sign their name, indicating the inmate's decision to withdraw a grievance.  (Duran Decl. ¶ 53.)

45.    Pursuant to FCJ grievance policies and procedures, any grievance or appeal that does not meet any requirement may be rejected and returned to the inmate without investigation and without addressing the substantive issues.  (Duran Decl. ¶ 54.)

46.    Pursuant to FCJ grievance policies and procedures, a grievance may be rejected

on procedural grounds, for any of the following reasons: The grievance was not submitted within the established time parameters; is not properly completed or is lacking specific details; fails to request relief or requests relief that is unclear or not available; or in any other way fails to comply with the provisions of the inmate grievance procedures. (Duran Decl. ¶ 55.)

47. Pursuant to FCJ grievance policies and procedures, an inmate who is not satisfied with the response/outcome received to a particular grievance may submit an Inmate Grievance "Appeal" form (J-105B) within 5 calendar days from the date of receipt of said response/outcome. (Duran Decl. ¶ 56.)

48. FCJ grievance policies and procedures, as well as Inmate Grievance "Appeal" form (J-105B), expressly state that the decision of the Bureau Commander regarding the "appeal" shall be final and constitutes exhaustion of all remedies within the agency. (Duran Decl. ¶ 57.)

49. Pursuant to FCJ grievance policies and procedures, inmates may submit grievances and appeals directly to the Bureau Commander in a sealed envelope when the inmate reasonably believes the grievance is of a nature which would pose a threat to the safety of the inmate, staff, or other inmates if the grievance were filed through established procedures. (Duran Decl. ¶ 58.)

50. FCJ grievance policies and procedures specifically state that pursuant to the PLRA, inmates must completely exhaust FCJ's internal grievance and appeals processes prior to filing any complaint with the court. (Duran Decl. ¶ 59.)

51. At all times relevant to this action, the FCJ grievance coordinators received, reviewed, and tracked all non-medical inmate J-105A grievances submitted for review pursuant to FCJ's inmate grievance processes and procedures. (Duran Decl. ¶ 60.)

52. On February 7, 2014, 16-days after Plaintiff's only reported encounter with Defendant Veloz, Plaintiff submitted a signed handwritten FCJ inmate grievance form, J-105A, to FCJ staff on the FCJ South Annex Jail, 2nd Floor, in connection with his alleged encounter. (Duran Decl. ¶ 61; Inmate Grievance Form No. 2014020069, ECF No. 114-4 at 24.)

53. Except for the addition of several facts not alleged in the FAC, Plaintiff's alleged

description of events stated in the grievance form involving Defendant Veloz (FCJ grievance no. 2014020069) essentially reflects those allegations describing the encounter forming the basis for his two allowed claims and that is set forth in his FAC filed on April 2, 2014. (Inmate Grievance Form No. 2014020069.)

54.    Also on February 7, 2014, Plaintiff submitted three (3) additional inmate grievance forms to FCJ staff nos. 2014020067, 2014020068, and 2014020070) unrelated in any way to Defendant Veloz. (Duran Decl. ¶ 62; Inmate Grievance Forms No. 2014020067, 2014020068, and 2014020070, ECF No. 114-4 at 21-22, 27-28, 31-32.)

55.    Pursuant to FCJ policy and procedures, FCJ staff rejected Plaintiff's reported grievance related to his alleged encounter with Defendant Veloz (2014020069) as being "past the time to grieve," indicating the same on the form. (Duran Decl. ¶ 63; Inmate Grievance Form No. 2014020069.)

56.    Upon rejection of his grievance Plaintiff had two options pursuant to FCJ's grievance policies and procedures: 1) await the reviewing Lt.'s response to FCJ's rejection of his grievance and, if confirmed, submit a properly completed inmate grievance "appeal" form (J-105B) within 5-days of his receipt of that response; or 2) "WITHDRAW" the grievance, and thereby abandon his alleged claims against Defendant Veloz. (Duran Decl. ¶ 64.)

57.    On February 7, 2014, FCJ staff routed all grievances submitted by Plaintiff that day to the designated box in the grievance distribution room, where an administrative assistant assigned tracking numbers and scanned them into the Offender-Trak system before routing them to the Watch Commander for final disposition. (Duran Decl. ¶ 66.)

58.    FCJ staff assigned tracking no. 2014020069 to identify Plaintiff's February 7, 2014 inmate grievance form relating to his alleged encounter with Defendant Veloz and the alleged related inmate assault, as alleged in his FAC, at p. 7:2-18. (Duran Decl. ¶ 67; Inmate Grievance Form No. 2014020069.)

59.    FCJ staff assigned tracking nos. 2014020067, 2014020068, and 2014020070 sequentially, to identify the other three, unrelated grievances, submitted by Plaintiff. (Duran Decl. ¶ 68; Inmate Grievance Form Nos. 2014020067, 2014020068, 2014020070.)

60. FCJ inmate grievance form no. 2014020069 is the only grievance form ever submitted to FJC by Plaintiff related in any way to either of the two allowed claims against Defendant Veloz contained in his FAC, at p. 7:2-18. (Duran Decl. ¶ 69.)

61. On or about February 12, 2014, FCJ staff briefed Watch Commander Lt. Mendez on the grievances submitted by Plaintiff on February 7, 2014, to include nos. 2014020069, 2014020067, 2014020068, and 2014020070, as well as the decision to reject grievance 2014020069 as untimely. (Duran Decl. ¶ 70.)

62. On February 12, 2014, as part of his Watch Commander duties, Lt. Mendez executed FCJ's Inmate Grievance Review Report for grievance form no. 2014020069, wherein he confirmed FCJ staff's resolution with Plaintiff, including staff's decision to reject the grievance as untimely. (Duran Decl. ¶ (Duran Decl. ¶ 71; Inmate Grievance Nos. 2014020067, 2014020068, 2014020069, 2014020070.)

63. On February 12, 2014, Lt. Mendez directed FCJ staff to provide Plaintiff with a copy of his Grievance Review Reports for grievances, 2014020067, 2014020068, 2014020069. and 2014020070, which they did as indicated on the form. (Duran Decl. ¶ 72; Inmate Grievance Nos. 2014020067, 2014020068, 2014020069, 2014020070.)

64. FCJ grievance records indicate Plaintiff withdrew a total of seven (7) grievances between January 21, 2014, and the filing of his April 2, 2014 FAC, to include no. 2014020069 filed against Defendant Veloz.[8] (Duran Decl. ¶ 72; Exhibit F, ECF No. 114-4 at 34-45.)

65. Pursuant to FCJ's grievance policies and procedures, Plaintiff's "withdrawal" of grievance form no. 2014020069 constituted an abandonment of the claims against Defendant Veloz contained in his FAC, at p. 7:2-18. (Duran Decl. ¶ 74.)

66. Defendant Veloz was not involved in any way with the review, evaluation, or processing of Plaintiff's grievance no. 2014020069, or grievance nos. 2014020067, 2014020068, and 2014020070. (Duran Decl. ¶ 75.)

67. At no time, pursuant to FCJ grievance policies and procedures, did Plaintiff

---

[8] Plaintiff denies that he withdrew his grievance form and states that his signature was forged. ((Pl.'s Response to Def.'s Req. for Admission and Interrogatories, Response to Interrogatory No. 44, ECF No. 122-3 at 6.)

"appeal" (form J-105B) FCJ staff's rejection of his inmate grievance form no. 2014020069. (Duran Decl. ¶ 76.)

68.    At all times relevant to this action and motion, Defendant Veloz was a Corrections Officer IV, employed with the Fresno County Sheriff's Office. (Decl. of Defendant, Tony Veloz, in Support of Mot. For Summary Judgment, or Alternatively, Summary Adjudication ('Veloz Decl.") ¶ 1, ECF No. 114-3.)

69.    Defendant Veloz attended and successfully completed the San Joaquin Valley College Correctional School in 1993 and was hired by the Fresno County Sheriff's Office in 1995. (Veloz Decl. ¶ 3.)

70.    Defendant Veloz graduated from the Fresno City College Police Officer Academy in 2005 and worked patrol from January - April 2006, when he returned to the Jail Division as a correctional officer in the Classification unit for approximately one year. (Veloz Decl. ¶ 3.)

71.    Defendant Veloz previously worked as a Classification Officer with FCJ for approximately eight years. (Veloz Decl. ¶ 3.)

72.    Defendant Veloz was promoted to Correctional Officer IV in June 2007. (Veloz Decl. ¶ 4.)

73.    In 2007, Defendant Veloz received 8 hours of specific training on the new jail management system called Offender-Trak. (Veloz Decl. ¶ 5.)

74.    At the time of Plaintiff's admission to FCJ in January 2014, Defendant Veloz was a veteran Corrections and former Classification Officer at FCJ, with extensive experience in inmate interaction, supervision, classification, and housing. (Veloz Decl. ¶ 6.)

75.    During his career and prior to the filing of Plaintiff's FAC on April 2, 2014, Defendant Veloz worked in various positions at the FCJ including intake and booking, and as a floor officer in the Main Jail, North Annex Jail, and South Annex Jail. (Veloz Decl. ¶ 7.)

76.    Up to and including the filing of Plaintiff's FAC on April 2, 2014, Defendant Veloz had extensive training and experience with the inmate grievance processes and procedures at FCJ. (Veloz Decl. ¶ 8.)

77.    At all timed relevant herein, Defendant Veloz had daily contact with inmates,

including inmates housed in various housing classifications, including administrative segregation, where he was able to observe their conduct and demeanor and develop instincts and skills in detecting various inmate characteristics and habits, including regarding deception and manipulation. (Veloz Decl. ¶ 9.)

78. Defendant Veloz' duties in January 2014 up to and including the filing of Plaintiff's FAC on April 2, 2014, included directing and routing inmates during scheduled mass movement events; overseeing and maintaining prisoner control and discipline, including by visual observance of inmates and directing the actions thereof; conducting security checks, inmate count, and providing, routing, assisting with and responding to inmate request and grievance forms. (Veloz Decl. ¶ 10.)

79. On January 26, 2014, Defendant Veloz was assigned to the North Jail 3rd Floor working the 6:00 p.m. - 6:00 a.m. shift, beginning on January 26, 2014. (Veloz Decl. ¶ 11.)

80. Defendant Veloz was never involved in any decisions regarding Plaintiff's classification or housing assignment. (Veloz Decl. ¶ 13.)

81. At no time prior to Plaintiff receiving his housing assignment covering January 20-26, 2014, did Plaintiff report to or alert FCJ's population management unit to any anticipated problems or concerns with his being assigned to NJ 3rd floor F-POD, and none were otherwise identified. (Veloz Decl. ¶ 14.)

82. A review of Plaintiff's inmate records confirms that FCJ had no knowledge of any alerts or concerns regarding Plaintiff's housing assignment either independently or from Plaintiff or anyone else at any time prior to the January 26, 2014 incident involving Plaintiff and recorded in the FCJ incident detail, and that Plaintiff was properly assigned to his housing unit on NJ 3rd floor F-POD in January 2014. (Duran Decl. ¶ 78.)

83. Defendant Veloz' initial encounter with Plaintiff on January 26, 2014, happened on the North Jail's 3rd Floor, but only after an alleged inmate assault on Plaintiff, when he and four fellow Correctional Officers spotted an inmate later identified as Plaintiff with a "fresh bump and redness to his facial area" standing by the entrance to his housing pod with all his jail issue property. (Veloz Decl. ¶ 17.)

84.     As the lead officer on the housing floor for his shift, Defendant Veloz along with other officers retrieved Plaintiff from the housing pod and escorted him to the gym area, where Defendant Veloz asked Plaintiff what happened.  (Veloz Decl. ¶ 18.)

85.     In response to the inquiry by Defendant Veloz, Plaintiff responded that he was hit from behind and did want to press any charges.  (Veloz Decl. ¶ 19.)

86.     Plaintiff refused to provide any further information to officers, including Defendant Veloz regarding the alleged inmate assault prior to being escorted by Defendant Veloz' fellow officers to the infirmary for evaluation.  (Veloz Decl. ¶ 20.)

87.     At the infirmary, FCJ medical staff nurses evaluated Plaintiff and provided him with an ice pack and ibuprofen before releasing him to officers.  (Veloz Decl. ¶ 21.)

88.     Defendant Veloz, in connection with this January 26, 2014 encounter, stayed behind while officers escorted Plaintiff to the infirmary and perform an investigative search for inmates that were possibly involved in or who had witnessed or had information about the alleged assault reported by Plaintiff.  (Veloz Decl. ¶ 22.)

89.     Despite officers' efforts, no witnesses or suspects in the alleged assault on Plaintiff could be located or identified.  (Veloz Decl. ¶ 23.)

90.     At no time during or after encountering Plaintiff on January 26, 2014, in his housing pod with his property and fresh redness to his facial area did Defendant Veloz see any bleeding from Plaintiff's person, or any blood on the floor or elsewhere, and did not throw or otherwise discuss a grievance form at or with Plaintiff, or make any threatening or other statements or remarks to him about such a form.  (Veloz Decl. ¶ 27.)

91.     Defendant Veloz' custom and practice, had Defendant Veloz in fact received information from Plaintiff or any staff or inmate about a threat to Plaintiff's safety, would have been to immediately remove Plaintiff from the area of concern to a temporary holding area until an investigation into the matter could be could be properly conducted.  (Veloz Decl. ¶ 28.)

92.     As the lead officer on Plaintiff's housing floor during the January 26, 2014 encounter with Plaintiff, Defendant Veloz directed fellow correctional officer, Fong Xiong, to generate a standard Jail "Incident Detail" report for the purpose of documenting and logging the

1  incident and all related statements, parties, officers, and other investigative activity involved in

2  and surrounding the matter.  (Veloz Decl. ¶ 24.)

3      93.    The FCJ's January 26, 2014 "Incident Detail" report detailing the actual

4  interaction between Plaintiff and FCJ officers accurately reflects the facts and circumstances as

5  they occurred at the time.  (Veloz Decl. ¶ 25.)

**III.**

**LEGAL STANDARD**

8      Any party may move for summary judgment, and the Court shall grant summary

9  judgment if the movant shows that there is no genuine dispute as to any material fact and the

10  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

11  omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Summary

12  judgment must be entered "against a party who fails to make a showing sufficient to establish the

13  existence of an element essential to that party's case...."  Celotex Corp. v. Catrett, 477 U.S. 317,

14  322 (1986).  "[A] party seeking summary judgment always bears the initial responsibility of

15  informing the district court of the basis for its motion, and identifying those portions of 'the

16  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

17  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

18  Celotex Corp., 477 U.S. at 322.

19      If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

21  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Each party's position,

22  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

23  parts of materials in the record, including but not limited to depositions, documents, declarations,

24  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

25  genuine dispute or that the opposing party cannot produce admissible evidence to support the

26  fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other

27  materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P.

28  56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001);

accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## IV.

## DISCUSSION

Defendant moves for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies and argues that in the alternative there are no genuine issues of material fact to show that Defendant was deliberately indifferent to Plaintiff or retaliated against him. Plaintiff responds that he was not required to exhaust his administrative remedies because none were available and that material disputes of fact exist to preclude summary judgment on the deliberate indifference and retaliation claims. Defendant replies that the administrative process was available to Plaintiff and the evidence demonstrates that Plaintiff is attempting to create an issue of material fact where none exists.

### A.    Defendant's Objection to Plaintiff's Evidence in Support of Opposition

Plaintiff filed his responses to Defendant Veloz discovery requests in support of his opposition to the motion for summary judgment. Defendant Veloz objects to the discovery responses on the ground that a party cannot submit his own discovery responses to create a genuine issue of material fact.

Rule 56 provides that a party must support its assertion that a fact cannot be or is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Defendant argues that the discovery responses are

16

hearsay, however, on summary judgment, evidence need not be in a form that is admissible at trial. See Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1118-24 (E.D. Cal. 2006). Accordingly, as long as a party submits evidence, which, regardless of its form, may be admissible at trial, it may be considered on summary judgment. Burch, at 1120 (citing, Fraser v. Goodale, 342 F.3d1032, 1036-37 (9th Cir. 2003)).

Here, Plaintiff submitted discovery responses, some of which have been verified. These statements could have been submitted by Plaintiff in an affidavit or declaration as allowed by Rule 56. Further, Plaintiff could proffer this testimony at trial as it is based on his personal knowledge. The Court shall consider that portion of the discovery responses which have been verified in opposition to the motion for summary judgment. As to that portion of the discovery responses which Defendant contends have not been verified, the Court shall not consider those responses.

Defendant also contends that the discovery responses are no more than impermissible self-serving testimony that is incapable of being used by Plaintiff to create a genuine dispute of material fact. While "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact[,]" F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), in this instance, Plaintiff has submitted testimony based on his personal knowledge regarding facts that he contends raise a genuine issue of material fact. Plaintiff's grievance alleges that he asked Defendant Veloz to be transferred based on threats made to his life. Defendant Veloz refused to transfer Plaintiff to another cell unless he was bleeding. Plaintiff was thereafter beaten up by the cellmates. Defendant Veloz brought Plaintiff a grievance form and threw it in his blood telling Plaintiff something along the line of this is what happens to inmates who complain. (ECF No. 122-2 at 2.) The Court finds these are not conclusory allegations lacking detailed facts that are incapable of creating a genuine issue of disputed fact. The Court simply cannot judge credibility when it comes to assessing the veracity of a party's statements. Defendant's objection is overruled.

**B.    Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __, 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.' "). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendant has presented evidence that the administrative process was available, Plaintiff filed a grievance that was denied as untimely, Plaintiff did not appeal the denial, and ultimately Plaintiff withdrew his grievance against Defendant Veloz. Defendant has met his initial burden of informing the district of the basis of the motion, and "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

Plaintiff responds that he was not required to exhaust administrative remedies in the

circumstances presented here because the assault had already occurred and there was no remedy that could be received through the administrative process. Plaintiff contends that Defendant has "not put forth one single remedial action that could have been taken to address" his grievance. (ECF No. 122 at 2.) Plaintiff argues that "Given the futility of pursuing a grievance in this situation, the Plaintiff should not be penalized for failing to engage in the pointless action of pursuing illusory administrative remedies." (Id.)

Plaintiff cites White v. Bukowski, 800 F.3d 392 (7th Cir. 2015) for the proposition that he does not have a duty to exhaust his administrative remedies where there are none available. In White, the plaintiff arrived at the jail when she was eight months pregnant and eleven days later she was taken to the hospital by ambulance where she gave birth. Id. at 393. The plaintiff alleged that her baby suffered serious birth defects due to deprivation of oxygen. Id. at 394. The plaintiff claimed that the defendants failed to take a proper medical history which she alleged would have revealed complications from the birth of her most recent child when she arrived at the jail, failed to respond to her requests for medical assistance, and failed to react quickly enough when she went into labor and needed to be rushed to the hospital. Id. On appeal, Judge Postner found that it would have done no good for the plaintiff to have filed a grievance regarding the lack of prenatal care because she was unlikely to become pregnant again while she was in jail. Id. at 394-395. Recognizing that in Booth, the Supreme Court found that filing a grievance could have provided disciplinary measures against the officer who assaulted the inmate, Judge Postner found that in this instance there were no administrative remedies available for the plaintiff because by the time she realized that her prenatal care was defective her baby had been born with birth defects. Id. at 395.

The Court does not find White to be persuasive authority to support the proposition that an inmate need not pursue administrative remedies. Recently in Ross, the Supreme Court reaffirmed that courts are not to create circumstances in which an inmate need not exhaust administrative remedies. 136 S. Ct. at 1862. "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available." Id. Therefore, the question is whether there were available remedies which would require

1 Plaintiff to exhaust the administrative process prior to bringing suit.

2       Defendant argues that <u>Booth</u> is the law of this circuit and that the administrative process

3 was available to Plaintiff. In <u>Booth</u>, the plaintiff alleged that a correctional officer had assaulted

4 him, bruised his wrists by tightening his handcuffs and twisting his wrists in front of him,

5 throwing cleaning materials in his face, and denying him medical attention to treat his injuries.

6 <u>Booth</u>, 532 U.S. at 734. The district court found that the plaintiff had not exhausted his

7 administrative remedies dismissing the action without prejudice and the plaintiff appealed. <u>Id.</u>

8 On appeal, the Supreme Court considered whether a prisoner was required to exhaust

9 administrative procedures where he was seeking monetary relief even though the prison

10 administrative grievance process provided no hope of the monetary relief he sought. <u>Booth</u>, 532

11 U.S. at 734. The question was found to be "whether or not a remedial scheme is 'available'

12 where . . . the administrative process has authority to take some action in response to a

13 complaint, but not the remedial action an inmate demands to the exclusion of all other forms of

14 redress." <u>Id.</u> at 736. The <u>Booth</u> Court found that a prisoner must pursue a remedy through a

15 prison grievance process as long as some remedy is available through the administrative

16 procedures. <u>Id.</u> at 741.

17       Further, the Ninth Circuit has held that a prisoner is not required to pursue the prison

18 grievance process where "no pertinent relief can be obtained through the internal process."

19 <u>Brown</u>, 422 F.3d at 935. So a prisoner is required to exhaust the administrative grievance

20 process as long as some remedy remains available. <u>Id.</u> "[A] prisoner need not press on to

21 exhaust further levels of review once he has either received all 'available' remedies at an

22 intermediate level of review or been reliably informed by an administrator that no remedies are

23 available." <u>Id.</u>

24       While Defendant argues that the administrative process was available to Plaintiff, the

25 issue here is not whether the process itself was available, but whether Plaintiff could obtain any

26 relief through the process. <u>Booth</u>, 532 U.S. at 741; <u>Brown</u>, 422 F.3d at 935. As Plaintiff has

27 pointed out, Defendant has not presented evidence that Plaintiff could obtain any remedy through

28 the administrative process. As Defendant has not shown that any "pertinent relief can be

obtained through the internal process", Defendant has not met his burden of demonstrating that Plaintiff was required to exhaust the administrative process. <u>Brown</u>, 422 F.3d at 935. Accordingly, Defendant's motion for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies is denied.[9]

### C.    A Material Issue of Genuine Fact Exists to Preclude Entry of Summary Judgment in Favor of Defendant Veloz

Defendant Veloz moves for summary judgment on the deliberate indifference and retaliation claims arguing that the evidence shows that his only interaction with Plaintiff was on January 26, 2014, and did not involve the events alleged to have occurred in the complaint. Plaintiff responds that the evidence clearly shows that there are material factual disputes to be resolved.

Defendant points to incident details that show that there was only a single incident with Plaintiff in which Defendant Veloz was involved. On January 26, 2014, Plaintiff was found standing at the NJ3 Pod-F entrance with his property and a fresh bump and redness to his right facial area. (ECF No. 114-4 at 17.) Plaintiff was escorted to the gym and Defendant Veloz asked him what had happened. (<u>Id.</u>) Plaintiff refused to identify who had attacked him or give any information about what had occurred. (<u>Id.</u>) Plaintiff only stated that he had been hit from behind and did not want to press charges. (<u>Id.</u>) After Plaintiff was escorted to the infirmary for treatment, Defendant Veloz and Officer Xiong stayed behind and searched the inmates that could have been involved in the assault with negative results. (<u>Id.</u>) Defendant Veloz contends that this was his last contact with Plaintiff. (Decl. of Tony Veloz ¶ 30.)

Defendant argues that the incident which aligns with the allegations in Plaintiff's

---

[9] The Court notes that there is evidence in the record which would support an argument that the administrative process was unavailable. Plaintiff states that he did not receive an inmate handbook because the jail ran out due to overcrowding. (ECF No. 122-3 at 3.) Plaintiff had never submitted a grievance before or challenged a grievance so he was unfamiliar with the process. (<u>Id.</u>) FCJ staff refused to accept a grievance from Plaintiff so he submitted one through internal affairs. (<u>Id.</u> at 4.) FCJ staff told him that he could not grieve retaliation and refused to accept his grievance. (<u>Id.</u> at 5.) However, Plaintiff has not argued that the administrative process was unavailable so the Court shall not address the issue.

As the Court finds that Defendant Veloz has not met his burden of demonstrating that administrative remedies were available, the Court does not address the arguments regarding whether Plaintiff's grievance was timely filed or withdrawn.

complaint occurred on January 27, 2014; and Defendant Veloz' shift ended at 6:00 a.m. that day. (ECF No. 114-1 at 8, Decl. of Lt. Russell Duran ¶ 83.)  The incident detail for the event in which Plaintiff was bleeding from his left eye cornea and had a laceration behind his ear occurred around 4:10 on January 27, 2014.  (ECF No. 114-4 at 19.)  The incident report does not include any information indicating that Defendant Veloz was involved in this incident.  Defendant Veloz contends that he was only involved in one of three incidents occurred involving physical altercations between Plaintiff and other inmates, the January 26 incident.  (Id. at 26; Decl. of Tony Veloz ¶ 25; 30.)

### 1. Deliberate Indifference

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.  Farmer v. Brennan, 511 U.S. 825, 833-34 (1994) (quotation marks omitted); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Plaintiff has presented evidence that he told Defendant Veloz that he was in danger and Defendant Veloz responded that he could not be moved unless he was bleeding.  (ECF No. 122-2 at 2.)  While Defendant Veloz argues that he was not involved in this incident and it occurred after he was off duty, the incident occurred at 4:10 and Defendant Veloz' shift did not end until 6:00 that morning.  Plaintiff states that Defendant Veloz was the officer who refused to move him after being told that Plaintiff was being threatened by other inmates.

Further, Defendant Veloz presents evidence that had he received information regarding a threat to Plaintiff's safety it would be his practice to immediately remove Plaintiff from the

holding cell.  (Decl. of Defendant Veloz ¶ 28.)  However, Plaintiff presents evidence that he told Defendant Veloz that he was being threatened by other inmates and Defendant Veloz refused to move him from the cell.  (ECF No. 122-2 at 2.)

Defendant Veloz argues that Plaintiff cannot prove that he made an intentional decision regarding the conditions to which Plaintiff was subjected that put Plaintiff at a substantial risk of harm or that Defendant Veloz failed to take reasonable measures to abate the risk.  Defendant argues that the true facts establish that none of the allegations against him ever happened.  In sum, Defendant Veloz argues that Plaintiff fabricated the incident.  However, the parties have submitted conflicting evidence and these conflicts must be resolved by the trier of fact.  Further, Defendant's evidence supports Plaintiff's claim that he was assaulted by inmates and suffered an injury to his eye and ear as alleged in the complaint.  (ECF No. 144-4 at 19.)

It appears that Defendant Veloz is actually arguing, not that the incident did not occur, but that he was not involved.  Whether Defendant Veloz' last contact with Plaintiff was on January 26, 2014, as he contends; or he was involved in the incident the morning of January 27, 2014, as Plaintiff alleges; is not suitable for resolution on summary judgment as it requires making credibility determinations, weighing the evidence, and drawing legitimate inferences that are functions for the jury, not the judge.  Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).  Defendant Veloz motion for summary judgment is denied as there are genuine issues of material fact that must be resolved by the trier of fact.

2.  Retaliation

A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in

the light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by the defendant for the adverse action were false and pretextual. McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted). Direct evidence of improper motive is only rarely available, and this case presents no exception. Watison, 668 F.3d at 1114; Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999). If the adverse action occurred "soon after" the protected conduct, such "timing can properly be considered as circumstantial evidence of retaliatory intent." Bruce, 351 F.3d at 1288 (quoting Pratt, 65 F.3d at 805). However, not every allegedly adverse action will support a retaliation claim. See, e.g., Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

Because a prisoner's First Amendment rights are necessarily curtailed, a successful retaliation claim requires a finding that " 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Defendant Veloz does not contend that Plaintiff did not engage in protected conduct, but argues that because Plaintiff's claims are based on a fallacy and none of the events alleged in the complaint actually happened, Plaintiff cannot prove that Defendant Veloz took any adverse action against him. In his response to Interrogatory No. 37, Plaintiff responded that Defendant Veloz told Plaintiff he would be punished or assaulted before the inmates attacked him. (ECF

No. 122-3 at 5.)  After the attack, Plaintiff Veloz took Plaintiff out of the cell bleeding, threw the grievance form in his blood, and told him that is what he gets for getting in the middle of the other officers in the gym.  (ECF No. 114-4 at 24.)  Defendant Veloz told Plaintiff that he better not complain anymore.  (Id.[10])

Similar to the deliberate indifference claim, Defendant Veloz again argues that Plaintiff fabricated the incident, however, this is a factual dispute that must be decided by the trier of fact. Bravo, 665 F.3d at 1083.  Defendant's motion for summary judgment on the retaliation claim is denied.

### 3.   Qualified Immunity

Defendant Veloz also argues that he is entitled to qualified immunity because Plaintiff cannot establish that he was deliberately indifferent to a risk of harm or retaliated against Plaintiff.  Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.  While often beneficial to address in that order, the Court has

---

[10] The Court references Defendant's copy of Plaintiff's grievance form as it is a clearer copy.

discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

Defendant does not argue that he is entitled to qualified immunity on the clearly established prong. As discussed above, it is clearly established that prison officials must protect inmates from being violently assaulted in prison by other inmates. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Cortez, 776 F.3d at 1050-53; Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040-42. Additionally, it is also clearly established that prison officials cannot retaliate against an inmate for filing an administrative grievance. Brodheim, 584 F.3d at 1269 (retaliation against prisoners for filing a grievance is prohibited as a matter of clearly established law).

In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). As discussed above, there are material issues of fact that exist to preclude a finding on summary adjudication that Defendant Veloz did not act with deliberate indifference in failing to protect Plaintiff or did not retaliate against Plaintiff for seeking to file an inmate grievance. Therefore, Defendant Veloz is not entitled to qualified immunity in this action and the motion for summary judgment is denied on this ground.

4.     Punitive Damages

Defendant Veloz argues that since Plaintiff cannot prove the allegations in the first amended complaint, he is entitled to summary judgment on the punitive damages claim. Plaintiff responds that Defendant Veloz' plan to have Plaintiff assaulted for seeking to file a grievance would easily qualify as the type of evil motive or intent to merit an award of punitive damages.

"It is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others[,]' " Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (citations omitted), or the defendant's acts are malicious, wanton, or oppressive,

id. at 808. A section 1983 punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." Megargee v. Wittman, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008) (quoting Kyle v. Patterson, 196 F.3d 695, 698 (7th Cir.1999)).

Here, Plaintiff has submitted alleged acts by Defendant Veloz, which if believed by the trier of fact, could result in a finding that Defendant Veloz' actions were malicious, wanton, or oppressive conduct such that punitive damages could be awarded. Defendant's motion for summary judgment on the punitive damages claim is denied.

## V.

## CONCLUSION AND ORDER

Based upon the foregoing, Defendant Veloz' motion for summary judgment, filed October 9, 2017, is HEREBY DENIED.

It is ADDITIONALLY ORDERED that a case management conference in this action is set for **December 21, 2017, at 9:30 a.m.** in Courtroom 9. The parties shall meet and confer and file a joint statement setting forth proposed dates for trial **seven (7) days** prior to the case management conference.

IT IS SO ORDERED.

Dated:   **December 6, 2017**

UNITED STATES MAGISTRATE JUDGE