# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY WASHINGTON, et al, <br><br> Plaintiffs, <br><br> v. <br><br> FRESNO COUNTY SHERIFF, et al., <br><br> Defendants. | Case No. 1:14-cv-00129-SAB <br><br> ORDER GRANTING COUNSEL'S MOTION TO WITHDRAW AS ATTORNEY <br><br> (ECF Nos. 145, 148) <br><br> MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOLLOWING EVIDENTIARY HEARING |

**I.**

**PROCEDURAL HISTORY**

Plaintiff Perry Washington, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 29, 2014. The action is proceeding on Plaintiff's claims against Defendant Veloz alleging deliberate indifference in violation of the Eighth Amendment and retaliation in violation of the First Amendment. Defendant filed a motion for summary judgment which was denied on December 6, 2017. Defendant filed a motion for reconsideration which was granted on February 21, 2018. In Albino v. Baca, 747 F.3d 1162, 1170-1171 (9th Cir. 2014), the Ninth Circuit held that "[i]f a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue.") (citations omitted). Accordingly, an evidentiary hearing was set for April 10, 2018, to hear evidence on:

1. Whether Plaintiff was provided with an inmate handbook upon his incarceration at Fresno County Jail;
2. Whether jail officials refused to accept Plaintiff's grievance against Defendant Veloz;
3. Whether Plaintiff thereafter attempted to grieve the alleged acts through Internal Affairs;
4. Whether Defendant Veloz threatened Plaintiff and offered him a bribe to drop his grievance; and
5. Whether Plaintiff withdrew his grievance against Defendant Veloz.

(ECF No. 138.)

An evidentiary hearing has held on April 10, 2018. Counsel William Schmidt and Jeffrey W. Eisinger appeared for Plaintiff Perry Washington and counsel Scott Hawkins appeared for Defendant Veloz. At the hearing, the Court heard testimony of witnesses and took evidence in relation to the issues outlined above.

Following the hearing, the Court took the matter under submission for the issuance of the following order to resolve whether Plaintiff exhausted his administrative remedies as to the claims presented in this action.

On April 20, 2018, Plaintiff's counsel filed a motion to withdraw as attorney of record and a request to hear the matter on shortened time. The Court granted the request to hear the motion on shortened time. All pending dates were vacated, and the parties were ordered to file any opposition to the motion to withdraw on or before May 4, 2018. Further, counsel was ordered to serve a copy of the motion on Plaintiff. On April 24, 2018, a certificate of service was filed. On May 4, 2018, Defendant filed a response to the motion to withdraw.

Oral argument on counsel's motion to withdraw was held on May 11, 2018. Counsel William Schmidt and Jeffrey W. Eisinger appeared with Plaintiff and counsel Scott Hawkins appeared for Defendant Veloz.

## II.

## MOTION TO WITHDRAW AS ATTORNEY

Counsel seeks to withdraw from his representation of Plaintiff in this action because it became apparent to him after the <u>Albino</u> hearing that Officer Veloz was not the individual who committed the acts alleged in the complaint. Plaintiff testified that the individual involved was Sgt. Diaz and at the hearing determined that Sgt. Diaz and Officer Veloz were not the same

2

individuals. Counsel states that in researching whether to file an amended complaint, defense counsel has provided records which show that Sgt. Diaz was not working at the time of the incident that is the basis for this litigation. Therefore, Plaintiff's counsel contends that there is no identifiable individual that can be substituted in good faith for Defendant Veloz. Counsel has discussed the issue with Plaintiff and he is unwilling to dismiss this action. Counsel seeks to withdraw as counsel in this matter due to his obligations under the Rules of Professional Conduct and Rule 11 of the Federal Rules of Civil Procedure.

The Local Rules of the Eastern District of California provides that:

> Unless otherwise provided herein, an attorney who has appeared may not withdraw leaving the client in propria persona without leave of court upon noticed motion and notice to the client and all other parties who have appeared. The attorney shall provide an affidavit stating the current or last known address or addresses of the client and the efforts made to notify the client of the motion to withdraw. Withdrawal as attorney is governed by the Rules of Professional Conduct of the State Bar of California, and the attorney shall conform to the requirements of those Rules. The authority and duty of the attorney of record shall continue until relieved by order of the Court issued hereunder. Leave to withdraw may be granted subject to such appropriate conditions as the Court deems fit.

L.R. 182(d).

The California Rules of Professional Conduct state that an attorney may not withdraw from employment in a proceeding without the permission of the court. Cal. Rules of Professional Conduct 3-700(A)(1). To withdraw counsel must take reasonable steps to avoid prejudicing the rights of the client, including providing notice, allowing time for the client to employ other counsel, and complying with applicable laws and rules. Cal. Rules of Professional Conduct 3-700(A)(2).

The Rules further provide that an attorney may withdraw from representation of a client where the client "insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law. . . ." Cal. Rules of Professional Conduct 3-700(C)(1)(a). The California Rules of Court require a noticed motion and declaration to be served on the client and all parties who have

appeared in the case. Cal. Rules of Court 3.1362.

It is within the Court's discretion whether to grant withdrawal. <u>L.S. ex rel. R.S. v. Panama Buena Vista Union Sch. Dist.</u>, No. 1:12-CV-00744 LJO, 2012 WL 3236743, at *2 (E.D. Cal. Aug. 6, 2012). "Factors the Court may consider include: (1) the reasons for withdrawal, (2) prejudice that may be caused to other litigants, (3) harm caused to the administration of justice, and (4) delay to the resolution of the case caused by withdrawal." <u>Id.</u>

Here, all parties have been served with notice of the motion to withdraw. Plaintiff's counsel seeks to withdraw because it became apparent during the <u>Albino</u> hearing that Defendant Veloz is not the individual who committed the acts alleged in the complaint. Further, upon investigation it has been determined that, although Plaintiff's testimony at the <u>Albino</u> hearing identified Sgt. Diaz as the individual involved, he was not working at the time and there is no individual that can be substituted for Defendant Veloz in this action.

At the hearing Plaintiff's counsel stated that defense counsel had provided records from the jail and after review of the records there is no identifiable defendant that can be substituted in place of Defendant Velos. Plaintiff has been advised of the issue and he refuses to dismiss the action.

The Court finds that there will be no prejudice to other litigants due to counsel's withdrawal. The Court notes that counsel was appointed in this action because Plaintiff had been declared incompetent in his criminal action. However, based on the <u>Albino</u> hearing the Court found no issues with Plaintiff's competency. Therefore, the reason requiring the appointment of counsel no longer exists. Further, based on the findings below, this action will be dismissed for failure to exhaust administrative remedies so there will be no harm to the administration of justice or delay to the resolution of the case.

The Court notes that counsel was not retained in this matter. He was appointed pro bono to represent Plaintiff after this action had been filed, the complaint had been screened and found to state a cognizable claim, and defendant had filed an answer. At the time that counsel entered the action, Plaintiff had been declared to be incompetent to stand trial in his criminal case, although he was later found to have returned to competency and his criminal matter was resolved. Counsel has

adequately represented the interests of Plaintiff, including opposing the current motion for summary judgment. The Court grants the request to withdraw as counsel for Plaintiff.

### III.

### LEGAL STANDARD FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __, 136 S. Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.' "). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendant bears the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

Defendant must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to

Plaintiff to show that something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendant. Id. (quotation marks omitted).

## IV.

## FIRST AMENDED COMPLAINT ALLEGATIONS

Plaintiff contends that due to lawsuits filed against the Fresno County SPCA in 2012, Fresno County responded in an unlawful way and used many other branches of and departments within Fresno County. While in the custody of the Fresno County Sheriff Department at the Fresno County Jail, Perry Washington was illegally beat up and threatened to drop his 2012 lawsuit. (First Am. Compl. 6, ECF No. 11.)

After a trial in the SPCA suit, the Fresno County District Attorney reinstated charges that had been dropped against Perry Washington and arrested him. (Id.) Perry Washington was late for a hearing and went to jail on January 21, 2014.[1] (Id. at 7.) While in custody, Perry Washington asked to be removed from his cell because he was being threatened by his cellmate. Defendant Velos refused to move Perry Washington to another cell or give him a grievance form. (Id.) Perry Washington was attacked by a group of inmates and an unidentified officer refused to come when Perry Washington hit the emergency button. Perry Washington was beaten and his eye was punctured. Defendant Veloz threw the grievance form down in Perry Washington's blood and said, "This is what happens to people who ask for grievance forms." (Id.)

## V.

## ANALYSIS AND FINDINGS ON EXHAUSTION OF ADMINISTRATIVE REMEDIES

As relevant to the current hearing, Plaintiff alleges that administrative process was unavailable to him due to the statements and actions of Defendant Velos and that jail staff

---

[1] While the complaint alleges that Perry Washington is in jail for being late for a court hearing, a review of the Fresno County Inmate Search shows he is in custody on one felony and five misdemeanor warrants. Fresno County Sheriff's Office, Inmate Search, http://www.fresnosheriff.org/records/inmate-search.html (last visited April 4, 2014).

6

interfered with his ability to access the grievance process by not providing him with an inmate handbook, refusing to accept his grievance forms, telling him he could not grieve retaliation; and forging his signature on forms stating that he withdrew his grievance. The Court conducted an evidentiary hearing on April 10, 2018, to determine whether Plaintiff was obstructed from exhausting his administrative remedies. At the evidentiary hearing, exhibits B1 through B10, B15 through B20, C1, C2, C11, G through G6, F0 through F23, and H1 through H11 were admitted into evidence. Plaintiff testified on his own behalf and Defendant presented the testimony of Defendant Veloz, Sgt. Roger Oliver, Todd Browning, Lt. Michael Porter, and Lt. Elias Lopez Mendez. For the reasons discussed below, the Court finds that Plaintiff failed to exhaust administrative remedies prior to filing this action.

If "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding." Albino, 747 F.3d at 1168. "[O]ne of the purposes of an evidentiary hearing is to 'enable [] the finder of fact to see the witness's demeanor, and to hear the tone of the witness's voice.'" United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). Indeed, it is only in "rare instances . . . that credibility may be determined without an evidentiary hearing." Earp v. Ornoski, 431 F.3d 1158, 1169-70 (9th Cir. 2005).

Failure to exhaust may be excused where the administrative remedies have been rendered "unavailable," and in such a case, the plaintiff bears the burden of demonstrating that the grievance process was unavailable to him through no fault of his own. Sapp v. Kimbrell, 623 F.3d 813, 822-23 (9th Cir. 2010); see also Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown, 422 F.3d at 939-40 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available). Aside from this single exception, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'… [a]nd that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross, 136 S. Ct. at 1856.

The test for deciding whether a grievance procedure was unavailable uses an objective standard. Albino, 697 F.3d at 1035. "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." Id. at 1034. An inmate may demonstrate the unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable." Id. at 1033. The inmate must make "a good-faith effort" to determine and comply with a prison's grievance procedures. Id. at 1035.

### A. Fresno County Jail Administrative Grievance Process

Fresno County Jail has inmate grievance procedures and inmates are provided with an Inmate Orientation Handbook that describes the process upon admission to the facility. (Decl. of Lt. Russell Duran ¶¶ 32, 34, ECF No. 114-4.) Inmates can receive a grievance form by requesting one from staff or by submitting an Inmate Request Form asking for one. (Id. at ¶ 36.) The form is provided either immediately or at the soonest available opportunity, but in no case later than the end of the staff member's shift who received the request. (Id. at ¶ 37.) Inmates may grieve any condition of confinement at the jail, including officer conduct, disciplinary actions, food, mail, medical care, legal services and telephone. (Id. at ¶ 38.) An inmate may also pursue a grievance for any alleged or threatened act of retaliation by Fresno County Jail staff. (Id. at ¶ 40.)

An inmate has 14 days from the date of the alleged incident to submit a grievance form. (Id. at ¶ 42.) The inmate is required to provide specific information related to the grievance, including the name of the employee involved, the identity of any witnesses, the date and time of the incident being grieved, the specific type of grievance which is limited to only type per grievance, and a description of the important details of the alleged problem or event, and other relevant information supporting the grievance. (Id. at ¶ 43.) The inmate must personally sign the grievance form. (Id. at 44.) If an inmate has trouble or needs assistance with completing the form or the grievance process may obtain assistance of jail staff or another inmate. (Id. at ¶ 45.) The staff involved in the grievance is expected to take an active role in resolving complaints or problems informally through discussion before an inmate resorts to the grievance process if possible. (Id. at 46.)

A grievance is to be investigated and processed for review within a reasonable time, usually

within fourteen calendar days. (Id. at ¶ 48.) Once a grievance form is received from an inmate, it is placed in the grievance bin in the Distribuвведение room prior to the end of the employee's shift, even if the grievance has been resolved or is withdrawn by the inmate. (Id. at ¶ 49.) After the initial investigation, the investigating staff member will make a recommendation to either sustain or not sustain the grievance. (Id. at ¶ 50.) The grievance form and the recommendation is then reviewed by a Lieutenant or Manager/Supervisor who makes the final determination to either sustain or not sustain the grievance. (Id.) A copy of the outcome is provided to the inmate. (Id. at ¶ 51.)

An inmate may voluntarily withdraw a grievance should he choose that option at any time during the grievance process, even after receipt of the outcome. (Id. at ¶ 52.) The grievance form contains a specific space for the inmate to sign indicating the decision to withdraw the grievance. (Id. at ¶ 53.)

Any grievance that does not meet any requirement may be rejected and returned to the inmate without investigation and without addressing the substantive issue. (Id. at ¶ 54.) A grievance may be rejected on procedural grounds for not being submitted within the established time perimeters; not being properly completed or lacking specific details; failing to request relief or requesting relief that is unclear or not available; or for any other reason that fails to comply with the inmate grievance procedures. (Id. at ¶ 55.)

An inmate who is not satisfied with the outcome received by the grievance process may submit an appeal within five calendar days from the date the response was received. (Id. at ¶ 56.) The result of the appeal is final and constitutes exhaustion within the agency. (Id. at ¶ 57.)

If an inmate reasonably believes that the grievance is of a nature that would pose a threat to the safety of the inmate, staff, or other inmate, he may submit the grievance in a sealed envelope directly to the Bureau Commander. (Id. at ¶ 58.) An inmate must completely exhaust the internal grievance and appeals process prior to filing an action in court.[2] (Id. at ¶ 59.)

**B.    Findings of Fact and Conclusions of Law Based on Evidentiary Hearing**

On February 7, 2014, at 6:11, Plaintiff submitted the grievance at issue in this matter.

---

[2] The testimony presented at the hearing was considered and found to be consistent with the declaration of Lt. Duran.

9

1  (Exhibit B7.)  The grievance named Defendant Veloz and indicated that the incident occurred

2  "Jan. 22 or around that time?"  (Id.)  The grievance states:

> I asked for a grievance from officer and was ignored.  Asked to leave cell due to threats made on my life.  I was told by Velos [sic] that I could not leave until I was bleeding.  I was taken in cell and beat up by inmates.  Officer Velos [sic] then took me out of cell bleeding then through [sic] a grievance on the floor in my blood.  I was told "That's what I get" in the middle of other officers in the gym.  He then said, "I better not complain anymore."  He then had me classified and sent to a bulldog dorm where I was assaulted by more of his friends including a commanding officer.  They put me in a dorm and I was beat up and taken to hospital. . . .

(Id.)

According to the inmate grievance procedure, once this grievance was received a staff member would meet with Plaintiff to attempt to resolve the issue at the lowest level.

The document notes "Not grievable it went past time to grieve."  (Id.)  Additionally, the grievance contains a signature in the area indicating that the inmate would like to withdraw the grievance.  (Id.)  However, the testimony at the hearing demonstrates that the officer who completed this form has been unable to be identified.  The form itself contains what appears to be an "R" and pursuant to the testimony this would be the signature of the officer as it is in ink and inmates do not have access to pens.  However, since the officer did not put a computer number on the form for identification purposes and the signature is illegible, the Fresno County Jail has been unable to determine who completed this form.[3]

Plaintiff testified that he was unable to remember how he submitted grievances, and he would not identify if it was his signature on grievance forms.

The grievance form itself shows that it was submitted on February 7, 2014.  There are two separate incidents that form the basis of the dispute in this matter.  On January 26, 2014, Plaintiff was housed on the 3rd Floor.  Plaintiff was assaulted by some inmates and Defendant Veloz was involved in the investigation into the assault.  Plaintiff was subsequently moved and housed on the 2nd Floor.  At approximately 4:10 a.m. on January 27, 2014, Plaintiff was observed being assaulted by several inmates.

---

[3] The Court notes that in looking at the documents filed in this matter the signature on this grievance appears to be that of Sgt. Diaz.  There was no evidence presented that any inquiry was made to Sgt. Diaz regarding whether he was the individual that processed this document.

1    During the hearing, Plaintiff testified that on January 26 or 27, 2014, he told an officer who
2 was wearing a badge identifying him as "Sgt. Diaz" that he was being threatened by his cellmates
3 and requested that he be moved to another housing unit. "Sgt. Diaz" told him that he knew how to
4 fight because he was black and refused to move him. Plaintiff asked for a "complaint form" and
5 after Plaintiff had been beaten up by the inmates, "Sgt. Diaz" returned with a grievance form,
6 threw it in his blood, and told him that is what got for complaining. Plaintiff testified that the
7 officer wearing the badge "Sgt. Diaz" was actually Defendant Veloz.

8    Defendant Veloz has never worn a badge identifying him as Sgt. Diaz. Defendant Veloz
9 has never been a sergeant and the sergeants wear a different badge than the other deputies. When
10 he is working, Defendant Veloz wears a name tag that identifies him as A. Veloz and contains his
11 identification number.

12    Although the grievance form that Plaintiff submitted regarding this incident stated that it
13 had occurred on January 22 or around that time, the incident that Plaintiff was grieving was the
14 incident that occurred the morning of January 27, 2014, involving "Sgt. Diaz."

15    The original complaint in this action was filed on January 29, 2014. As relevant here, the
16 complaint alleges that Perry Washington is being retaliated against, beaten in jail, and refused help.
17 (Compl. 2,[4] ECF No. 1.) Plaintiff alleged that Officer Jose Yang denied Plaintiff a grievance form
18 on January 26, 2014, at 7:15 a.m. (Id.)

19    Plaintiff filed an amended complaint alleging that it was an unidentified officer who
20 refused to provide him with the grievance form and retaliated against him. (ECF No. 11.) On
21 February 11, 2015, Plaintiff filed a notice informing the Court that the unidentified officer who
22 threw his grievance in his blood was Officer Veloz.[5] (ECF No. 60.)

23    Although Defendant did not argue that Plaintiff filed this action prior to exhausting his

---

[4] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[5] Plaintiff testified at the hearing that he clearly remembers the badge of the officer that was involved in these incidents contained the name Sgt. Diaz. It is unclear why Plaintiff named Defendant Veloz in this action and why he never moved to amend the complaint to correctly identify the individual involved. However, as discussed infra, Plaintiff filed this action two days after the incident and before making any attempt to file a grievance. Therefore, Plaintiff did not exhaust the claim brought in this action prior to filing suit.

11

1 administrative remedies, pursuant to the PLRA, Plaintiff was required to exhaust his administrative
2 remedies prior to filing suit in this action. 42 U.S.C. § 1997e(a); see Ross, 136 S. Ct. 1850.
3 Following the evidentiary hearing, it is clear that Plaintiff did not exhaust his administrative
4 remedies prior to filing this action.

Plaintiff filed this action on January 29, 2014, alleging the claims which were eventually found to be cognizable. However, Plaintiff did not submit his grievance to the Fresno County Jail until February 7, 2014, nine days after this action was filed. The Supreme Court has held that the PLRA requires that all available remedies must be exhausted before a complaint challenging conditions of confinement can be entertained regardless of the relief offered through the administrative process. Booth, 532 U.S. at 739, 741; Porter, 534 U.S. at 524. The exhaustion requirement applies to all prisoner suits about inmate life. Porter, 534 U.S. at 532; Woodford v. Ngo, 548 U.S. 81, 85 (2006). The purposes of the PLRA are to allow a prison to address complaints about the programs administered before being subjected to suit, to reduce the litigation to the extent that complaints are satisfactorily resolved, and to improve the litigation that does occur by leading to preparation of a useful record. Jones, 549 U.S. at 219; Ngo, 548 U.S. at 89. Exhaustion prior to commencement of the action is an indispensable requirement. McKinney v. Carey. 311 F.3d 1198, 1199 (9th Cir. 2002). Therefore, Plaintiff must have properly exhausted the claims that are proceeding in this action prior to filing suit in order to comply with the PLRA. Jones, 549 at 224; Ngo, 458 at 93; cf. Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014) (allowing new claims included in amended complaint that were exhausted prior to filing amended complaint).

Here, Plaintiff filed this action prior to submitting an inmate grievance and the Court finds no credible evidence that he was obstructed from doing so. On the contrary, Plaintiff did submit a grievance regarding the incident after this action was filed. Plaintiff presented no evidence that he made any attempt to grieve the incident prior to filing this action in federal court. Where the court concludes that the prisoner has failed to exhaust administrative remedies prior to filing suit, the proper remedy is dismissal without prejudice, even where there has been exhaustion while the suit is pending. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); Lira v. Herrera, 427 F.3d

1164, 1171 (9th Cir. 2005); McKinney, 311 F.3d at 1200-01; see also Maiden v. LA Cty. Sheriff's Dep't Men's Cent. Jail, 334 F. App'x 76, 77 (9th Cir. 2009) (unpublished) (finding district court properly dismissed action because inmate did not complete the grievance process prior to filing suit and failed to demonstrate that he was obstructed from doing so.)

Defendant has raised the issue of failure to exhaust and since Plaintiff filed this action on January 29, 2014, and did not submit a grievance to the Fresno County Jail until February 7, 2014, for the claims that were alleged in the original complaint, he had not exhausted administrative remedies prior to filing suit. Requiring dismissal without prejudice when there has been no presuit exhaustion provides a strong incentive that furthers the Congressional objectives of the PLRA. McKinney, 311 F.3d at 1200–01. Because it is clear that Plaintiff did not exhaust administrative remedies prior to instituting this action in federal court, this action must be dismissed. 42 U.S.C. § 1997e(a).[6]

## VI.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Counsel's motion to withdraw as attorney of record for Plaintiff is GRANTED and the Clerk of the Court shall terminate William L. Schmidt as attorney for Plaintiff;

2. Defendant Veloz motion for summary judgment on the grounds of exhaustion of administrative remedies is GRANTED;

3. Plaintiff's action is DISMISSED WITHOUT PREJUDICE FOR FAILURE to exhaust administrative remedies;

4. The Office of the Clerk is DIRECTED to serve a copy of this order on Plaintiff at 1133 E. San Madele, Fresno, California 93710; and

---

[6] As the Court finds that Plaintiff filed this action prior to exhausting his administrative remedies, it need not address whether the grievance was timely filed. However, based on the evidence presented at the hearing, the Court does find that Plaintiff has presented no credible evidence that jail officials obstructed Plaintiff from filing his grievance.

Further, based upon the evidence presented at the hearing, Defendant Veloz was not the officer who did he acts that are alleged in the complaint. Whether subsequent action is now precluded by the limitations period is not an issue before this Court.

5. The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated: **May 11, 2018**

_____
UNITED STATES MAGISTRATE JUDGE